# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**TORNIER, INC.**, a Delaware
corporation, and **WRIGHT MEDICAL
TECHNOLOGY, INC.**, a Delaware
Corporation,

      Plaintiffs,

vs.                        Case No. _____

**CAPROCK ORTHOPAEDIC
CONSULTANTS, LLC,** a Texas limited
liability corporation; **JARED GIST,** an
individual; **EXACTECH, INC.**, a Florida
corporation,

      Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs TORNIER, INC., a Delaware corporation, and WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation (jointly, "Wright"), for their Complaint for Injunctive and Other Relief against Defendants CAPROCK ORTHOPAEDIC CONSULTANTS, LLC ("Caprock"), JARED GIST ("Gist"), and EXACTECH, INC. ("Exactech") (collectively "Defendants"), state as follows:

## INTRODUCTION

This action arises out of the unlawful conduct of Gist and his wholly-owned LLC, Caprock (jointly referred to herein as "Gist" unless specifically noted), to

misappropriate Wright's successful North Texas business. Pursuant to an Independent Sales Representative Agreement ("Agreement"), until December, 27, 2020, Caprock as "Representative" and Gist as "Guarantor" of Caprock's obligations to Wright, distributed, marketed and sold Wright medical device products for joint replacement and soft tissue repair. Although Gist was bound by certain 12-month post-termination restrictive covenants not to compete or solicit Wright customers or sales agents, Gist immediately did just that on behalf of Exactech, a direct competitor of Wright.

Defendants' unlawful scheme began no later than November 2020, when Gist met with Exactech in Gainesville, Florida to discuss representing Exactech products in North Texas. At this point, Exactech had little to no market presence in North Texas. During this November 2020 meeting, Gist disclosed to Exactech the specific doctors with whom he had relationships and promised that he could bring $2 million in business from Wright to Exactech "tomorrow." At this meeting, Gist disclosed his Agreement to Exactech's attorney and both Exactech and Gist discussed how to circumvent Gist's obligations so that Defendants could unlawfully convert Wright's business to Exactech.

Indeed, as early as January 2021, Wright learned that Gist was representing and selling Exactech product to the same doctors explicitly defined as the "Territory" to which Gist agreed *not to solicit* until December 27, 2021. On January 18, 2021,

Wright promptly advised both Gist and Exactech that Wright knew of Gist's unlawful solicitations, reminded Gist of his contractual obligations, and demanded that he immediately cease and desist his unlawful activities. Although Gist responded to Wright that he understood his obligations and would continue to abide by them, that has not been the case. Unfortunately, Gist -- with Exactech's knowledge and support -- continued to breach his post-termination obligations to Wright by selling the products of Exactech, a direct competitor or Wright, to the same customers that Gist promised ***not*** to solicit. Despite multiple efforts by Wright to stop Defendants' improper and unlawful conduct outside of court intervention, Gist refuses to honor his obligations and Exactech, for its part, failed and refused to even respond to Wright altogether.

As a result of Defendants' unlawful conduct, Wright lost customer goodwill and relationships in the Territory (as defined in the Agreement), as well as significant monetary damages. Wright now brings this lawsuit for breach of contract against Caprock and Gist and tortious interference with contract against Exactech to enjoin Defendants from causing Wright further harm and to recover the damages caused by Defendants.

## **PARTIES**

1.      Tornier, Inc. is a Delaware corporation with its principal place of business in Bloomington, Minnesota. Tornier is an indirect wholly owned subsidiary

of Stryker Corporation, a Michigan corporation, with its principal place of business in Michigan.

2.    Wright Medical Technology, Inc. is a Delaware corporation with its principal place of business in Memphis, Tennessee. Wright is an indirect wholly owned subsidiary of Stryker Corporation, a Michigan corporation, with its principal place of business in Michigan.

3.    Caprock Orthopaedic Consultants, LLC is a Texas limited liability company with its principal place of business in Lubbock, Texas.

4.    Upon information and belief, Gist is the sole member of Caprock.

5.    Jared Gist is an individual and a citizen of the State of Texas and, upon information and belief, resides at 4004 106th Lubbock, Texas 79423.

6.    Exactech, Inc. is a Florida corporation with its principal place of business in Gainesville, Florida employing or otherwise in a relationship with Gist to engage in the improper conduct alleged herein .

## JURISDICTION AND VENUE

7.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00 excluding interest and costs.

8.    This Court has personal jurisdiction over Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the

events giving rise to Wright's claims occurred in this judicial district including, but not limited to, Gist and Exactech formed their agreement to unlawfully compete against Wright in this judicial district, Gist traveled to Gainesville, Florida to meet with Exactech in furtherance of competing against Wright, Gist induced a sales representative of Wright to travel to Gainesville, Florida to meet with Exactech in furtherance of competing against Wright, and Exactech is tortiously interfering with Wright's Agreement with Gist in this judicial district.

## EVENTS GIVING RISE TO THIS ACTION

### Wright's Business

9.    Wright is a recognized leader of surgical solutions for the upper extremities (shoulder, elbow, wrist and hand), lower extremities (foot and ankle) and biologics. Wright's products make surgeries and recoveries from injury and illness simpler, faster and more effective.

10.    Wright and its products have a broad appeal and acceptance in the marketplace and among the orthopedic surgeon community.

11.    The extremities implant and products industry is highly competitive. One of Wright's direct competitors is Exactech.

12.    To sell its products, Wright relies heavily on sales representatives and the relationships they cultivate on Wright's behalf with the surgeons in their

respective territories. Wright's sales representatives may be direct employees of Wright or, like Caprock, independent sales representatives.

13.     Wright's sales representatives provide technical support and assistance to surgeons during surgeries, showcase Wright's products and train surgeons on Wright's highly specialized and state-of-the-art products.

14.     Surgeons who use Wright products constitute a significant portion of Wright's customer base. Wright invests substantial time and resources to build and maintain goodwill and long-term relationships with surgeons and their staffs.

15.     In terms of customer preferences, every surgeon has his or her own protocol in the operating room, and this protocol varies from surgeon to surgeon. Therefore, a critical element in maintaining a strong customer relationship is Wright's knowledge of a surgeon's preferences and method of operating. All of this information is not generally available to the public, is of great value to Wright and would give any of Wright's competitors who acquired such information, such as Exactech, an unfair competitive advantage.

16.     Wright spends a significant amount of time and money developing and maintaining long-term relationships with its customers. These relationships often take years to establish and are crucial to the success of Wright's business. Wright's sales representatives are the face of Wright to its clients. Wright's customers typically become very loyal to Wright through the sales representatives with whom

they work due to the emphasis that Wright places on providing exceptional customer service and investing in its customer relationships.

**Wright's Confidential and Proprietary Information**

17.    Wright's sales representatives and distributors are given access to confidential and proprietary information. This information includes, but is not limited to, the identity of Wright's customers, financial information, marketing information, pricing, product specifications, customer information (including surgeon preferences), and sales and product usage history. This information includes all technical aspects of Wright's products, including what sets its products apart from competitors, as well as Wright's product designs and plans for the future.

18.    As a result of being a distributor and sales representative for Wright, Caprock and Gist had substantial access to, and in fact utilized, Wright's confidential and proprietary business information.

19.    Wright's confidential and proprietary business information is not generally available to the public, is of great value to Wright and would give any of its competitors who acquired such information, including Exactech, an unfair competitive advantage.

**Gist's Relationship with Wright**

20.    Effective July 2, 2018, Gist entered into the Agreement with Wright to be able to sell Wright's products within the Territory. A true and correct copy of the

Agreement is attached hereto as **Exhibit 1**. The Territory was defined to include Dr.

Alejandro Verdugo and Dr. Karl Pankratz. (*See* Exhibit A to Exhibit 1.)

21.    The Agreement required, among other things, certain post-termination

obligations on behalf of Caprock (Representative) and Gist (as Guarantor),

including:

> 1.2    <u>Non-competition</u>.
>
> In consideration of the appointment by Company pursuant to Section 1.1, subject to any State law restrictions and Section 1.2(b), Representative [Caprock] and Guarantor [Gist] represent and warrant to Company that they do not (not does any entity or person affiliated with it) currently represent or promote any lines or products that are competitive with any Product, and that they shall not (nor shall any entity or person affiliated with it) during the Term and for a period of one (1) year thereafter, directly or indirectly, represent, promote, sell or otherwise commercialize within the Territory any products that are the same or substantially similar to, or competitive with, the products (including Products) manufactured and/or sold by Company at any time or by which the sale of such product would reduce the opportunity for sale of any Product. …

(Agreement, § 1.2(a).)

> 1.3    <u>Non-Solicitation</u>.    The    Representative    and    Guarantor acknowledge that the agreements and covenants contained in this Section 1.3 are essential to protect the value of the Company's, or any of its subsidiaries' or affiliates', business and assets and by his or her current representation with the Company and its subsidiaries, the Representative and Guarantor have obtained and will obtain such knowledge, contacts, know-how, training and experience and there is a substantial probability that such knowledge, know-how, contacts, training and experience could be used to the substantial advantage of a competitor of the Company or any of its subsidiaries or affiliates and to the Company's, or any of its subsidiaries' or affiliates', substantial detriment.    Therefore, the Representative and Guarantor agree that for the period commencing on the date of this Agreement and ending on

the first anniversary of the termination of the Representative's Agreement hereunder (such period is hereinafter referred to as the "Restricted Period"), the Representative and Guarantor shall not whether for their or their own account or for the account of any other individual, partnership, firm, corporation or other business organization (other than the Company), directly or indirectly solicit, endeavor to entice away from the Company or any of its subsidiaries or affiliates, or otherwise directly interfere with the relationship of the Company or any of its subsidiaries or affiliates with (a) any person who, to the knowledge of the Representative or Guarantor, is employed by or otherwise engaged to perform services for the Company or any of its subsidiaries or affiliates (including, but not limited to, any independent sales representatives or organizations) or (b) who is, or was within the then most recent 12-month period, a customer, client or prospect of the Company, its predecessors or any of its subsidiaries or affiliates with whom or with which the Representative or Guarantor had contact during the one (1) year period prior to the termination of this Agreement. …

(Agreement, § 1.3.)

2.2    <u>Confidentiality</u>.  Representative acknowledges and agrees that all Company Information is confidential and proprietary to Company. Representative shall not use any Company Information during the Term or thereafter for any purpose other than as permitted or required for performance by Representative under this Agreement.  Representative further agrees not to disclose or provide any Company Information to any third party.    For purposes of this Section 2.2, "Company Information" means all information, other than information in the public domain or expressly designated by Company as non-confidential, which is disclosed to Representative by Company or embodied in the Products and relating in any way to Company's manufacturing processes, markets, customers, pricing, patents, inventions, products, procedures, designs, plans, organization, employees or business in general.

(Agreement, § 2.2.)

22.    Gist, as "Guarantor," agreed to "guarantee in full the obligations of [Caprock] under th[e] Agreement" as if Gist "had executed the Agreement as

9

Representative." (Agreement, § 5.5.) Thus, Gist is personally liable for compliance with the Agreement, including its post-termination obligations.

23.     On July 1, 2019 and again on December 30, 2019, the Agreement was amended. Pertinently, the Second Amendment to the Independent Sales Representative Agreement ("Second Amendment") extended the Term of the Agreement to December 27, 2020 and added additional doctors to the Territory. (*See* Second Amendment at § 1 and Exhibit A, respectively, a true and correct copy of which is attached hereto as **Exhibit 2**.)

24.     Between July 2, 2018 and December 27, 2020, Caprock, through both Gist and its assistant sales representatives, marketed, represented and sold Wright products in the Territory.

25.     On December 27, 2020, the Agreement terminated and, pursuant to the post-termination obligations therein, Caprock and Gist, as Representative and Guarantor, were prohibited for a period of one year from selling products competitive to those offered for sale by Wright to any of the doctors identified as the Territory, and were prohibited from soliciting any person employed by or performing services on behalf of Wright. Further, Gist was prohibited from disclosing or using any Wright Company Information (as quoted above).

**Defendants' Scheme to Misappropriate Wright's Business in the Territory**

26.     Prior to the termination of the Agreement, Gist began conspiring with Exactech to supplant Wright in the Territory and in the North Texas region.

27.     On or before November 2020, and several weeks prior to the Agreement's termination, Gist began discussions with Exactech about representing its products in the Territory. Part of Gist's consideration of representing Exactech included discussions with Dr. Verdugo about whether he would switch to Exactech products if Gist began representing them.

28.     In November 2020, Gist solicited and induced a Wright sales representative in the area, Matthew Redwine ("Redwine"), to travel with him to Exactech's headquarters in Gainesville, Florida to discuss representing Exactech products that are competitive to those offered by Wright.

29.     Gist represented to Exactech that he had $2 million in annual sales that he could "bring over tomorrow" to Exactech and expressly identified all the doctors in the North Texas region whom Gist sold Wright products to. Part of Gist's representation to Exactech about how much business he could convert to Exactech was based on his prior discussion with Dr. Verdugo about committing to continue to do business with Gist even if he began selling Exactech products.

30.     At this same November 2020 meeting, Gist and Redwine provided Exactech with their respective agreements with Wright, which include the post-

termination non-compete and non-solicit obligations. Brazenly, both Gist and Exactech discussed circumventing the obligations and Exactech even boasted to Gist and Redwine that Exactech "can get you out of it" -- referring to their respective post-termination obligations owing to Wright. Gist, for his part, represented that he could circumvent his obligations by selling Exactech products through Redwine and other sales representatives that Gist employed.

31.     Ultimately, Exactech offered both Gist and Redwine opportunities to sell Exactech products. Gist agreed while Redwine refused to go along with Gist and Exactech's scheme because of his non-compete obligations to Wright.

32.     When Redwine told Gist that he intended to stay with Wright and honor his non-compete obligations, Gist told Redwine that "I'm going to take all your business."

33.     No sooner had the Agreement with Wright terminated, than Gist continued soliciting the sale of Exactech's products to the very same customers that Gist promised not to solicit.

34.     Indeed, in early January 2021, Gist coordinated a demonstration lab with Drs. Verdugo, Pankratz and others to demonstrate Exactech shoulder products, including Exactech's GPS Glenoid System. The GPS Glenoid System is designed to assist surgeons in mapping and locating the precise placement of implant products

in conjunction with shoulder surgeries. Exactech's GPS Glenoid System is directly competitive to Wright's own proprietary Blueprint system.

35.    On January 15, 2021, Dr. Verdugo did a shoulder surgery with Exactech products through Gist and has substantially ceased using Wright products for Exactech since that surgical procedure.

36.    On January 18, 2021, Wright wrote Gist, with a copy to Exactech's general counsel, to remind Gist of the obligations owed to Wright and to demand that Gist, personally and through Caprock, comply with the contractual obligations under the Agreement. A true and correct copy of the January 18, 2021 letter is attached hereto as **Exhibit 3**.

37.    Only a couple weeks later, on February 2, 2021, Deck Goddard ("Goddard"), a Wright sales representative, received a text message from Dr. Pankratz's nurse regarding scheduling a shoulder surgery with Gist using Exactech products. Dr. Pankratz was one of the doctors that was part of the Territory and a doctor Gist was prohibited from selling competitive products to. Put simply, Gist was brazenly selling Exactech products to Dr. Pankratz right after receiving Wright's January 18, 2021 letter demanding that he immediately cease and desist from such conduct.

38.    Since February 2021, Dr. Pankratz, through Gist, has substantially ceased using Wright products and converted his business to using Exactech's competitive products.

39.    On February 9, 2021, after learning of Gist's case with Dr. Pankratz, Wright again wrote Gist, and again copying Exactech's general counsel, advised that Wright was aware of Gist's unlawful activities and to demand that that such activities cease immediately. A true and correct copy of the February 9, 2021 letter is attached hereto as **Exhibit 4**.

40.    On February 12, 2021, Gist respond to Wright. A true and correct copy of Gist's February 12, 2021 response is attached hereto as **Exhibit 5**. Gist falsely claimed that he had abided by the obligations under the Agreement and would continue to do so.

41.    Exactech failed and refused to respond to either the January 18 or February 9, 2021 letters. And, as demonstrated below, instead of stopping Gist from selling Exactech products into the Territory, Exactech continued to induce and incentivize Gist to continue doing so.

42.    Only a few weeks later, on April 28, 2021, Redwine witnessed Exactech products at Gist's office. Gist apparently believed that the mere passage of a few weeks would allow him to continue flouting his obligations to Wright.

43.    On May 3, 2021, Exactech products were identified by Wright representatives at Grace Medical Center with Gist's name on the packaging. Those Exactech products were identified for use with Drs. Verdugo and Pankratz, both of whom are doctors identified as part of the Territory that Gist is prohibited from soliciting or selling competing products to.

44.    In addition to the foregoing wrongdoing, Wright learned that Gist also solicited other doctors in the Territory to use Exactech products. All in direct violation of Gist's obligations to Wright.

45.    As Gist blatantly ignored Wright's previous letters, on May 7, 2021, outside counsel to Wright wrote both Gist and Exactech to provide a final demand to honor Wright's contractual rights or face litigation. True and correct copies of the May 7, 2021 letters are attached hereto as **Exhibit 6**.

46.    On May 14, 2021, Gist responded that "I understand my agreement and will continue to abide by the agreement." However, Gist's conduct continues unabated.

47.    Once again, Exactech ignored Wright's concerns and failed to respond.

**Effect of Defendants' Improper and Unlawful Conduct**

48.    While only discovery will reveal the full scope of Defendants' misconduct, Gist and Exactech worked in concert to leverage and exploit the goodwill that Gist was entrusted to develop on behalf of Wright for the benefit of

Exactech. Indeed, Gist and Exactech set up a lab to demonstrate and sell Exactech products to doctors identified as part of the prohibited Territory in the Agreement and Gist sold and is continuing to solicit and sell Exactech products into the Territory.

49.    Defendants' blatant refusal to honor and respect Wright's contractual rights threaten Wright's customer goodwill, the stability of its sales force which is being solicited by Gist, and the value of its Company Information and trade secrets which are undoubtedly being disclosed and exploited by Defendants. Without injunctive relief, Wright stands to suffer yet more irreparable harm and financial damage.

50.    All told, Defendants are causing, threatening, and/or will continue to cause or threaten significant irreparable harm to Wright, including the loss of value of confidential and/or proprietary information, the loss of valuable employee relationships, the loss of long-standing customer relationships, loss of goodwill, as well as damage to Wright's reputation as an industry leader and its ability to successfully market its goods and services. Money alone cannot make Wright whole, as it has no adequate remedy at law.

## COUNT I
## <u>BREACH OF CONTRACT</u>
### Against Gist and Caprock

51.    Wright hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 50.

52.    The Agreement that Wright entered into with Caprock and Gist is a valid and enforceable contract.

53.    Wright performed all of the material duties and obligations it agreed to and owed Caprock and Gist under the Agreement.

54.    The post-termination activity restrictions contained in the Agreement are reasonable in both scope and duration, and are necessary to protect Wright's legitimate protectable interests in its customer and employee relationships, confidential business information, as well as its goodwill and other legitimate business interests.

55.    Caprock and Gist breached, and continue to breach, their post-termination contractual obligations owing to Wright by: (a) providing services, covering cases, making proposals, making sales and/or servicing products, whether directly or indirectly, in the same Territory that Caprock and Gist are prohibited from selling competing products to; (b) soliciting, inducing or influencing, or attempting to solicit, induce or influence, persons performing services on behalf of Wright to terminate their relationship with Wright and sell Exactech products.

56.    As a result of Caprock and Gist's breaches of contract, Wright has been irreparably injured, and it continues to face irreparable injury. Wright is threatened with losing its customer and employee relationships, its customer goodwill, and the value of its confidential and proprietary information, all for which a remedy at law is inadequate. Accordingly, Caprock and Gist must be enjoined and restrained by Order of this Court. To the extent a remedy at law is adequate, Wright seeks actual, incidental, compensatory, and consequential damages, along with its reasonable attorneys' fees and interest.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT
### Against Exactech

57.    Wright hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 56.

58.    As set forth above, the Agreement with Caprock and Gist is a valid and enforceable contract.

59.    The post-termination activity covenants, confidentiality covenants and other provisions contained in the Agreement are reasonable in scope and duration and are reasonably necessary to protect Wright's legitimate protectable interests in its long-standing, well established and valuable customer relationships, its Company Information, as well as its goodwill.

60.    Exactech was fully aware of the Agreement and Gist and Caprock's post-termination obligations set forth therein by no later than November 2020, when Gist provided Exactech with a copy of his Agreement.

61.    Despite having knowledge of the Agreement and receiving multiple communications regarding its improper conduct, Exactech intentionally induced, permitted or incentivized Gist and Caprock to violate the post-termination obligations owed to Wright, without justification, in an effort to use Gist and Caprock to misappropriate Wright's business in the Territory, destroy Wright's North Texas sales infrastructure, and unfairly compete with Wright.

62.    On information and belief, Exactech's intentional interference was malicious, unjustified and accomplished through wrongful means.

63.    As a result of Exactech's intentional interference, Wright has suffered irreparable and other significant injuries.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Wright seeks judgment in its favor and an Order against Defendants that grants the following relief:

A.    Permanently enjoins Defendants, and all parties in active concert or participation with them, from soliciting the sale of any products that are competitive to those offered by Wright to any customer identified in the Territory of the Agreement;

B.    Permanently enjoins Defendants, and all parties in active concert or participation with them, from soliciting, servicing, covering cases for

or making proposals to any customer identified in the Territory of the Agreement;

C.      Permanently enjoins Defendants, and all parties in active concert or participation with them, from using or disclosing any of Wright's confidential, proprietary information;

D.      Permanently enjoins Defendants, and all parties in active concert or participation with them, from hiring, soliciting, inducing or influencing, encouraging, or attempting to hire, solicit, induce, influence, or encourage any Wright employee, agent, or independent contractor to terminate his or her employment and/or business relationship with Wright;

E.      Permanently enjoins Defendants, and all parties in active concert or participation with them, from encouraging, inducing and/or facilitating Wright employees to breach their contractual obligations owing to Wright;

F.      Orders Defendants and all parties in active concert or participation with them to return to Wright all originals and copies of all files, devices and/or documents that contain or relate to Wright's confidential and proprietary information, including without limitation, all computers, electronic media, PDA's and electronic storage devices;

G.      Awards Wright actual, incidental, compensatory, and consequential damages to be proven at trial;

H.      Awards Wright exemplary or punitive damages in an amount to be proven at trial due to Defendants' willful and malicious activities;

I.      Awards Wright its costs and expenses incurred herein, including reasonable attorneys' fees and interest;

J.      Awards Wright to receive all sums disgorged from the Defendants; and

K.      Awards Wright such further relief as the Court deems necessary and just.

## DEMAND FOR JURY TRIAL

Wright demands a trial by jury on all issues so triable.

Dated this 8th day of June, 2021.

Respectfully submitted,

CARLTON FIELDS, P.A.

*/s/ Robert W. Pass*
Florida Bar No. 183169
rpass@carltonfields.com
sdouglas@carltonfields.com
Post Office Drawer 190
Tallahassee, FL   32302-0190
Telephone: (850) 224-1585
Facsimile:  (850) 222-0398

Michael D. Wexler
(*Pro Hac Vice* Application to be Submitted)
Marcus L. Mintz
(*Pro Hac Vice* Application to be Submitted)
SEYFARTH SHAW LLP
233 S. Wacker Drive
Suite 8000
Chicago, Illinois  60606
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

*Attorneys for Plaintiffs Tornier, Inc. and*
*Wright Medical Technology, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was e-filed electronically through CM/ECF on June 8, 2021.

*/s/ Robert W. Pass*
Attorney